FILED
2012 Mar-01  PM 04:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **CAROLYN M. HOBBS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:11-CV-1699-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Carolyn Hobbs ("Ms. Hobbs") brings this action pursuant to 42 U.S.C. § 416(i), § 216(i) of the Social Security Act (the "Act"). She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB"). Ms. Hobbs timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Hobbs was a 49-year-old female at the time of her hearing before the administrative law judge (the "ALJ") held on October 16, 2008. (Tr. 38, 33). Ms.

Hobbs graduated from high school and later attended two years of trade school in the area of distributive education.  (Tr. 38).  Her prior work experience over the past fifteen years was as a wire harness assembler.  (Tr. 48).

Ms. Hobbs protectively applied for DIB on August 30, 2006. (Tr. 15, 82).  Ms. Hobbs maintains that she became disabled on October 17, 2005, due to poor eyesight and short term memory loss from an aneurysm.  (Tr. 86, 53).  Her claim was denied initially on November 22, 2006.  (Tr. 15, 53).

Ms. Hobbs timely filed a request for a hearing that was received by the Social Security Administration on January 26, 2007.  (Tr. 15, 59).  A video hearing was held on October 16, 2008.  (Tr. 15, 33).

On February 18, 2009, the ALJ concluded Ms. Hobbs was not disabled as defined by the Act and denied her DIB application.  (Tr. 15-24).  On March 4, 2009, Ms. Hobbs  submitted a request for review of the ALJ's decision.  (Tr. 8-9).  On March 23, 2011, the Appeals Council denied review, which resulted in the ALJ's disability determination that was adverse to Ms. Hobbs becoming the final decision of the Commissioner.  (Tr. 1).

On May 23, 2011, Ms. Hobbs initiated her lawsuit with this court asking for a review of the ALJ's decision.  (Doc. 1).  On October 12, 2011, Ms. Hobbs filed a brief (Doc. 9) in support of her appeal, and on November 14, 2011, the Commissioner

2

followed with his responsive brief.  (Doc. 10).  No reply brief was filed.  This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id*.  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Id*.  Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal

standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[1]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

─────────────────

[1]  The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through February 16, 2012.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)     whether the claimant can perform her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Ms. Hobbs had not engaged in substantial gainful activity since

the alleged onset date of her disability, *i.e.*, October 17, 2005.  (Tr. 17 ¶ 2).  Thus, the

claimant satisfied step one of the five-step test.  20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following

severe impairments:  a history of aneurysm status post craniotomy with surgical

clipping . . . and left homonymous hemianopsia secondary to an aneurysm[.]"[2]  (Tr.

17 ¶ 3).  The ALJ further found that Ms. Hobbs has a history of the following other

impairments:  "migraine headaches, chronic reflux, tobacco abuse, and cervical

radiculopathy[.]" (Tr. 17).  Accordingly, the ALJ concluded that Ms. Hobbs satisfied

the second step of the sequential disability evaluative process.   20 C.F.R. §

404.1520(c).

At step three, the ALJ determined that Ms. Hobbs did not have an impairment

or a group of impairments that met or medically equaled one of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19 ¶ 4).  Ms. Hobbs does not

---

[2]   The Merriam-Webster online medical dictionary defines an aneurysm to mean "an abnormal blood-filled dilatation of a blood vessel and especially an artery resulting from disease of the vessel wall[.]" http://www.merriam-webster.com/medical/aneurysm (last visited Feb. 29, 2012). This same source defines hemianopsia as "blindness in one half of the visual field of one or both eyes . . . [.]" http://www.merriam-webster.com/medical/hemianopsia (last visited Feb. 29, 2012).  Homonymous means "affecting the same part of the visual field of each eye[.]" http://www.merriam-webster.com/medical/homonymous (last visited Feb. 29, 2012).

challenge this determination on appeal.

The ALJ then evaluated Ms. Hobbs's RFC at step four, and the claimant was found to have:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is unable to drive automatic equipment or vehicles.  She is unable to work around heavy or dangerous machinery. She is unable to perform assembly line work with items moving from left to right.  She cannot work on ladders[,] ropes[,] or scaffolds or at unprotected heights.  The claimant would be unable to perform tasks where she has to look to her left or watch anything moving from left to right.  She would have to work with objects directly in front of her.

(Tr. 19-20 ¶ 5).[3]  Further, the ALJ accepted the testimony of the vocational expert that at this RFC-reduced light level, the claimant was unable to perform her past relevant employment as a wire harness assembler.  (Tr. 22; *id.* ¶ 6).

---

[3]  The Regulations define light work as:

(b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through February 16, 2012).

Because of the ALJ's finding that Ms. Hobbs was unable to perform any past relevant work, it was necessary to continue to step five of the sequential analysis. (Tr. 23). Using the Medical-Vocational Guidelines as a framework and once again relying upon testimony from the vocational expert, the ALJ determined that Ms. Hobbs was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 23). Examples of such possible light jobs included employment as a packager, ticket marker, and counter clerk. (*Id.*). Accordingly, the ALJ concluded that Ms. Hobbs was not disabled as defined by the Act, and denied her DIB claim. (Tr. 24; *id.* ¶ 11).

## ANALYSIS[4]

In this appeal, Ms. Hobbs seeks a reversal premised upon multiple grounds. One of her contentions is that the Commissioner's decision should be reversed because the ALJ failed to properly articulate good cause for according limited weight to the opinion of her treating physician when finding that she was not disabled. (Doc. 9 at 9). The court turns to this issue first and agrees with Ms. Hobbs that, under the circumstances of her case, the ALJ committed reversible error.[5]

---

[4] Some of the analysis in this case persuasively flows from *Swackhamer v. Astrue*, No. 3:10-CV-1091-VEH, (Doc. 15) (N.D. Ala. Mar. 18, 2011).

[5] As a result, the court does not reach the merits of Ms. Hobbs's other arguments presented on appeal.

An ALJ may not arbitrarily reject uncontroverted medical testimony. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982). The opinion of a treating physician as to the plaintiff's condition and the medical consequences thereof is entitled to deference, absent good cause. *See* 20 C.F.R. §§ 404.1527, 416.927; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary.") (emphasis added). Good cause exists when the treating physician's opinion is "not bolstered by the evidence, or where the evidence supports a contrary finding." *Lewis*, 125 F.3d at 1440. The good cause standard is also met when "the doctors' opinions [are] conclusory or inconsistent with their own medical records." *Id.*

However, the ALJ's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). Furthermore, when the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true and be given substantial or considerable weight. *MacGregor*, 786 F.2d at 1053.

In his decision, the ALJ correctly observes that one of Ms. Hobbs's treating physicians, Dr. Patricia McCoy ("Dr. McCoy"), had assessed her "to have severe

limitations of functional capacity and [to be] incapable of minimal sedentary activity." (Tr. 18).  More specifically, on August 17, 2007, Dr. McCoy, a specialist in ophthalmology,[6] provided an "Ongoing Physician's Statement of Disability" relating to Ms. Hobbs's restricted functional abilities in light of her visual impairments.  (Tr. 306-07).

In assigning weight to the opinions of Dr. McCoy, the ALJ states:

> Limited weight has been given to the opinion of Dr. McCoy as stated in the insurance form she completed on behalf of the claimant dated August 17, 2007 (Exhibit 10F, page 10).  The opinions of Dr. McCoy were made in an effort to assist the claimant with her private insurance disability policy and not for purpose[s] of "disability" as defined by the Regulations by the Administration.  The issue of disability for purposes of this opinion is reserved to the Commissioner.  Moreover, Dr. McCoy does not have sufficient knowledge of vocational issues to determine whether or not there are jobs available with the claimant's visual limitations and other functional limitations.

(Tr. 22).

While the ALJ attempts to discredit Dr. McCoy's medical source statement[7]

---

[6] The Commissioner incorrectly refers to Dr. McCoy as an optometrist.  (Doc. 10 at 8; *id.* at 10 ("Just as a VE is not equipped to make medical findings, an optometrist does not have the expertise to assess the effects of those findings on the ability to perform specific jobs.")).

[7] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'"  SSR 96-5p, 1996 WL 37418, at *4 (footnote omitted).

10

favorable to Ms. Hobbs's disability claim, his explanations for doing so are difficult to discern and also are inadequate.  Moreover, the court cannot ascertain from the ALJ's opinion which portions of Dr. McCoy's opinions, if any, the ALJ has credited.

The ALJ first suggests that Dr. McCoy's opinions are due to be discounted because they were offered in the context of Ms. Hobbs's seeking private insurance coverage.  The court cannot envision why Dr. McCoy's filling out a private insurance physician's form (as opposed to a comparable federal disability document) would somehow negate the value of her viewpoint concerning Ms. Hobbs's vocational abilities.  Certainly, in his brief, the Commissioner offers no controlling authority in which such a principle has been recognized, much less trumped the Eleventh Circuit's longstanding treating physician's rule as articulated in *Lewis*.  *See id.*, 125 F.3d at 1440 ("The ALJ <u>must</u> clearly articulate the reasons for giving less weight to the opinion of a treating physician, and <u>the failure to do so is reversible error</u>.") (emphasis added).

Second, the ALJ indicates that the issue of disability is reserved for the Commissioner.  While this principle is commonplace disability dogma, *see* 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability."); SSR 96-5p, 1996 WL 37418, at *2 ¶ 5 (reserving to Commissioner issue of "[w]hether an individual is

'disabled' under the Act"), such an abstract statement, without more, lacks any appreciable link to Dr. McCoy's functional assessment of Ms. Hobbs and, therefore, cannot constitute an articulation of good cause for rejecting her opinions. Put differently, Dr. McCoy did not determine the issue of disability in a conclusory fashion, *cf.* 20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); instead, she simply provided a medical source statement based upon her underlying treatment of Ms. Hobbs for visual impairments that is entitled to deference unless good cause is demonstrated for discounting it.

Under an extension of the ALJ's reasoning, a treating physician's opinion that impacts upon the issue of disability would always be subject to rejection as an improper infringement upon the Commissioner's role. Such an untenable position is contrary to the treating physician's rule and also is at odds with SSR 96-5p:

> However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

1996 WL 37418, at *3 (emphasis added).

12

Third, the ALJ indicates that Dr. McCoy lacks "sufficient knowledge of vocational issues to determine whether or not there are jobs available with the claimant's visual limitations and other functional limitations." There is nothing in the record to substantiate the ALJ's position that Dr. McCoy is unqualified to provide a vocational assessment of Ms. Hobbs. In fact, treating as well as non-treating doctors are routinely asked to provide medical source statements as part of the disability determination process. Moreover, to the extent that the Commissioner contends that lack of sufficient knowledge is a valid basis for rejecting Dr. McCoy's opinions, as pointed out above, he mistakenly refers to her as an optometrist instead of as a licensed treating physician, who undoubtedly is qualified to render occupationally-related <u>medical</u> findings about her patients.

The court is particularly troubled by the fact that the ALJ has disregarded the sole vocationally-related opinion from a treating physician having the background and expertise relevant to Ms. Hobbs's severe condition of blindness and who saw her more than once.[8]   In sum, nothing contained in the ALJ's decision or the

_____

[8]   The Commissioner maintains that Dr. McCoy does not have "a [sufficient] longitudinal picture" of Ms. Hobbs's visual impairments for "greater weight" to be afforded to her opinions. (Doc. 10 at 9 n.2). However, at the same time, he points to no evidence from an eye specialist that controverts Dr. McCoy's conclusions. The two other doctors that the ALJ purportedly relies upon greatly are neurosurgeon Dr. Cheng W. Tao ("Dr. Tao") and consultative examiner, Christine B. Lloyd ("Dr. Lloyd"), a clinical neuropsychologist. (Tr. 22, 335). The ALJ gives "controlling

Commissioner's brief persuades this court that the ALJ has satisfied the good cause standard in assigning limited weight to Dr. McCoy's opinions.  Accordingly, the case is due to be remanded for further proceedings consistent with this memorandum opinion.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence.  Accordingly, the determination of the Commissioner will be remanded for further development by separate order. (*See* Doc. 10 at 12 ("If, however, the Court should find that the ALJ's decision was not supported by substantial evidence or that the ALJ did not follow the applicable legal standards, the appropriate remedy is remand for further proceedings and not reversal.")).

---

weight" to Dr. Tao's determination that Ms. Hobbs "could return to work from a neurological standpoint if she could find a ride . . . ." (Tr. 22 (emphasis added)).  Dr. Lloyd provided a neuropsychological report dated December 23, 2008 (Tr. 335-45) and concluded that Ms. Hobbs "suffers from both depression and anxiety." (Tr. 345). The ALJ does not address either one of these conditions when giving "great weight" to Dr. Lloyd's opinions.  Regardless, the focus of Dr. Tao and Dr. Lloyd's assessments are unrelated to Ms. Hobbs's severe visual restrictions.

**DONE** and **ORDERED** this the 1st day of March, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge